## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| LORIN ASHTON, BASSNECTAR TOURING, INC., and AMORPHOUS MUSIC, INC., | |
| Plaintiffs, | |
| v. | Case No. _____ |
| SHAWN ORTEZ, KENNETH CLAYTON ELKINS, DOWNRIGHT ENTERTAINMENT, LLC, MISSISSIPPI UNDERGROUND, LLC, JORDAN JULIAN, and JOHN DOES 1-25. | |
| Defendants. | |

## VERIFIED COMPLAINT
## FOR INJUNCTIVE AND OTHER RELIEF

Plaintiffs, LORIN ASHTON, professionally known as the artist "Bassnectar," and his entities BASSNECTAR TOURING, INC., and AMORPHOUS MUSIC, INC. (Lorin Ashton and his entities are hereinafter referred to as "Bassnectar") by counsel, SWANSON, MARTIN & BELL, LLP, for their Verified Complaint against Defendants, SHAWN ORTEZ, KENNETH CLAYTON ELKINS, DOWNRIGHT ENTERTAINMENT, MISSISSIPPI UNDERGROUND, JORDAN JULIAN, and JOHN DOES 1-25 (collectively "Defendants"), state as follows:

## NATURE OF THE CASE

1.      Defendants are a conglomerate of event promoters, event producers, a music venue, and their promotional affiliates, agents, and representatives. This case arises from Defendants' calculated conspiracy to attack, ruin, and destroy other music events, artists, and music venues, whom Defendants' cynically view as competition to their own business aspirations.

Through the use of mob-style business practices that exploit public moral outrage and weaponize it against their perceived competition, Defendants' maliciously execute threats, scare tactics, and the appalling exploitation of an important social movement, the #MeToo movement, to intimidate music fans, manipulate prospective ticket buyers, and destroy other people's lives at any cost. Most recently, Defendants' goal was not only to demonize and defame the artist Bassnectar and threaten to assault Bassnectar fans, but to profit from the destruction of Bassnectar's fanbase and to "Ruin Bassnectar's New Year's Eve Shows." At its core, this case is about a coordinated mob of weaponized tortious interference, to ruthlessly terrorize and attempt to dominate the music industry at any cost.

2.      Lorin Ashton, professionally known as "Bassnectar," has built not only a career as a successful musician, but a widespread cultural movement that merges music, art, and community to inspire compassion, social justice, and positive change. His work has empowered audiences across the country, creating a community rooted in inclusivity, activism, and the transformative power of music. At the height of Bassnectar's career pre-COVID, Bassnectar was one of the highest grossing live touring acts in North America, with millions of fans worldwide. In 2019, Bassnectar's nonprofit charity organization, Be Interactive 501c3, raised over $300,000 to give away free therapy to anyone in need. By headlining rock music venues like Madison Square garden, and national festivals like Lollapalooza and Bonnaroo, Bassnectar was many music fan's introduction to electronic music between 2000-2010. Since 1999, Bassnectar helped pave the way for the modern festival industry, investing immeasurable energy into lifting up artists and fans alike. As a purveyor of an entire genre known as "bass music," Bassnectar was instrumental to the careers of many current artists, and the entire music scene which developed around this genre, years before the phrase "EDM" was invented.

2

3.     The most recent target of Defendants' tortious interference was the October 17, 2025 announcement  of the artist Bassnectar's New Year's Eve "Love Here" Event contracted at a music venue in East St. Louis, which Defendants viewed as competition. Within hours of the "Love Here" event announcement, Defendants conspired to launch a coordinated online attack against Bassnectar, Bassnectar fans, the Pop's Night Club venue, and the online community of the bass music scene, which Bassnectar helped create over the last twenty-five years. Defendants' plot was designed to incite violence, terrorize fans, and smear their perceived competition in order to derail the event, and divert ticket sales to their own unannounced New Year's Eve show, held just across the Mississippi River in St. Louis, Missouri. When legal counsel for Bassnectar sent cease and desist letters demanding that Defendants stop their tortious and defamatory conduct, Defendants mocked the letters publicly, posting them online and maliciously weaponizing them as promotional tools for their own event, which features artists like G Jones and Eprom who are longtime friends of Lorin Ashton and Bassnectar collaborators. Defendants' threatened to attack and assault anyone who attended the "Love Here" event, directly violating fans of the music scene which Bassnectar helped create over several decades.

4.     Defendants are perpetrators of destruction, who shamelessly exploit the #MeToo movement in order to further their own personal business ventures, by virtue signaling on social media to portray themselves as protectors of women and children, while simultaneously threatening the safety and dignity of the women on Bassnectar's team, and across the worldwide music scene. Defendants – a group of men – falsely and maliciously branded Bassnectar as a "pedophile" and co-opted #MeToo slogans such as "believe women," edited onto the Bassnectar logo to escalate their threats and intimidation, while simultaneously undermining the integrity of the #MeToo movement itself, and degrading the honor of every human being who

cares about the most vulnerable members in our society. In reality, Defendants have admitted their defamatory posts regarding Bassnectar were posted for the sole intention to have Bassnectar's show cancelled.

## PARTIES

5.      Plaintiff Lorin Ashton ("Mr. Ashton") professionally known as "Bassnectar," is a citizen and resident of the State of California. Bassnectar has been active as a musician, producer, songwriter and DJ in the entertainment industry for over twenty-five years.

6.      Plaintiff Bassnectar Touring, Inc. ("BTI") is a Delaware corporation with a principal place of business located in California. BTI is Mr. Ashton's touring company.

7.      Plaintiff Amorphous Music, Inc. ("Amorphous") is a Delaware corporation with a principal place of business located in California. Amorphous is Mr. Ashton's record label company.

8.      Upon information and belief, Defendant, DownRight Entertainment, LLC. ("DownRight"), is a Missouri limited liability company with a principal place of business located at 810 Streiff Lane, Ballwin, Missouri 63011. Upon information and belief, DownRight organizes and promotes concerts and live events, including those which take place in Illinois.

9.      Upon information and belief, Defendant, Kenneth Clayton Elkins ("Mr. Elkins"), is citizen of the State of Missouri and a resident of Ballwin, MO. Upon information and belief, Mr. Elkins is the owner of DownRight. Upon information and belief, Mr. Elkins registered and authors posts on the social media platform Facebook under the username "clayton.elkins.1," which are accessed by users across the United States. Upon information and belief, Mr. Elkins books the artists at Mississippi Underground, like G Jones and Eprom who work with CAA and Good Direction Agency.

4

10.     Upon information and belief, Defendant, Mississippi Underground, LLC. ("MU"), is a Missouri limited liability company with a principal place of business located at 1420 N Broadway, Saint Louis, Missouri 63102. Upon information and belief, MU is a live music venue that works with DownRight to organize and promote live events.

11.     Upon information and belief, Defendant, Jordan Julian ("Mr. Julian"), is citizen of the State of Missouri and a resident of Saint Louis, Missouri. Upon information and belief, Mr. Julian is the owner of MU and the head of production for DownRight.

12.     Upon information and belief, Defendant, Shawn Ortez ("Mr. Ortez"), is citizen of the State of Illinois and a resident of Collinsville, Illinois. Upon information and belief, Mr. Ortez is a promotor for DownRight and works as a lighting technician for MU. Upon information and belief, Mr. Ortez registered and authors posts on the social media platform Facebook under the username "ShpongledSpunion," which are accessed by users across the United States.

13.     JOHN DOES 1-25 are as yet anonymous internet users on platforms including, but not limited to, X, Facebook, Reddit, and Instagram who contributed to Defendants' wrongful actions and who Plaintiffs expect will be identified and named after written discovery in this matter is complete.

## JURISDICTION AND VENUE

14.     The Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

15.     Personal jurisdiction exists over Defendants because, upon information and belief, all of Defendants' actions constituting the causes of actions below were the result of purposeful actions directed at an event scheduled to take place at venue which is located in the Southern

District of Illinois which is planned to be attended by Southern District of Illinois residents.

16.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because, upon information and belief, a substantial part of the events giving rise to the claims asserted in this Complaint occurred in the Southern District of Illinois and where a substantial part of property that is the subject of the action is situated.

## FACTUAL ALLEGATIONS

### *Defendants Conspire to Interfere with the Love Here Event and Ruin Bassnectar's Brand*

17.    In the fall of 2025 MU and its affiliated company DownRight were planning a New Year's Eve show titled "G Jones B2B EProm NYE" featuring artists from the bass music scene and community at MU in St. Louis, Missouri on December 31, 2025 (hereinafter referred to as "GPROM").

18.    MU and DownRight became upset when they learned that Bassnectar (and a promotion company called StageLive Event Solutions, LLC ("StageLive") which is owned by an individual named Joshua Campbell ("Mr. Campbell")) had also planned a New Year's Eve event titled the "Love Here" event at Pop's Night Club and Concert Venue located at 1403 Mississippi Ave, Sauget, Illinois 62201 to occur on December 29, 2025-January 26, 2026 (hereafter referred to as the "Love Here Event"), just across the Mississippi River from GPROM.

19.    Panicking, MU and DownRight saw Bassnectar as a roadblock to the success of their own unannounced GPROM event and launched a coordinated online attack against Bassnectar, designed to incite violence, threaten the safety of Love Here Event attendees, derail the Love Here Event, and divert attention and ticket sales away from Love Here and to GPROM.

20.    Defendants knowingly used false allegations against Bassnectar as a sales tactic to alert potential fans not to support him and attend their GPROM event instead.

21.      Mr. Ortez, at the direction of and in conspiracy with Defendants, repeatedly published false and defamatory statements about Bassnectar, calling him a "sexual predator" and "pedophile." These attacks were calculated to destroy Bassnectar's reputation and sabotage his ability to perform and conduct business.

22.      Mr. Ortez, at the direction of and in conspiracy with Defendants, escalated the attack on Bassnectar by creating a Facebook page entitled "Ruin Bassnectar's New Year's Eve Shows!!!" which was specifically created to "brainstorm and plan how to attack [the Love Here Event]." Mr. Ortez further used this event to encourage individuals to sabotage the Love Here Event by flooding the venue with harassing calls:



*See* true and accurate copies of Mr. Ortez's Social Media Posts attached as **Exhibit A**.

23.      Mr. Ortez went further, threatening to assault against Bassnectar and attendees of the Love Here Event with "supersoakers full of piss":



**Shawn Ortez**
1h · 🌐

Well looks like I know what my New Year's Eve plans are... Walking around and finding Lorin so I can punch him square in his mouth and cover him in my own piss.

Lorin, you are not welcome in this fucking city!!! A warning for any and all attending. I do plan on fucking up your day. I do plan on raining on your parade. I will be there with super soakers full of piss. Enjoy the line.

Also just need to add... This show is not even in St. Louis it's at Pops Night Club And Concert Venue in the rough part of Illinois lol.

Ex. A.

24.     Mr. Ortez's defamatory and inflammatory statements were designed to incite harassment, threats, and violence against Bassnectar and his fans, and create a dangerous environment for anyone attending or associated with Bassnectar's shows.

25.     By inciting harassment of Pop's Night Club, Defendants deliberately sought to disrupt valid and ongoing business agreements between Bassnectar and Pop's in connection with the Love Here Event.

26.     Mr. Ortez also published personal and private information concerning the owner of StageLive on Facebook, and encouraged third parties to harass Mr. Campbell and his family, as well as women on Bassnectar's team. Ex. A.

27.     Mr. Campbell subsequently filed for a Stalking No Contact Order against Mr. Ortez on behalf of himself and Mr. Ashton. At the hearing held on November 20, 2025, Mr. Ortez admitted in open court that "the threats against Bassnectar were not real" and that he "just wanted to get the show cancelled." The Circuit Court for the Third Judicial District, Madison County, Illinois entered an order of protection against Mr. Ortez, effective until February 19, 2026, listing

Mr. Campbell and Mr. Ashton as protected parties. *See* November 20, 2025 Order attached as **Exhibit B** and Verified Affidavit of Joshua Campbell attached as **Exhibit C**.

28.     Counsel for Bassnectar also sent Mr. Ortez a cease and desist letter demanding that he immediately stop making false and disparaging statements about Bassnectar and remove all existing posts referring to them from his social media platforms.

29.     Rather than responding to the cease and desist letter, Mr. Ortez celebrated receipt of the letter in a Facebook post, using it as a tactic to promote and offer discounts to GPROM:



Ex. A.

30.     In an attempt to divert ticket sales and attendance away from the Love Here Event and promote GPROM, Mr. Elkins, at the direction of and in coordination with Defendants, posted on Facebook:



*See* Mr. Elkins Social Media Posts attached as **Exhibit D**.

31.     On October 27, 2025, counsel for Bassnectar sent Mr. Elkins a cease and desist letter demanding that he stop publishing statements intended to harm Bassnectar, remove all posts referring to them.

32.     Rather than responding to the letter, in early November 2025, Mr. Elkins posted pictures of the cease and desist letter on various social media cites, including the official Bassnectar subreddit page, attacking the Love Here Event while simultaneously promoting GPROM:





Ex. D.

33.    Upon information and belief, an individual Charles Gary ("Mr. Gary") has registered and authors posts on the social media platform X under the handle "@notorious_CEG.

34.    Upon information and belief, Mr. Gary, at the direction of and in coordination with Defendants, falsely reported bomb threats relating to the Love Here Event, publicly boasted about these actions on X, and also made statements suggesting that Bassnectar should be shot "like Charlie Kirk":



*See* Mr. Gary Social Media Posts attached as **Exhibit E**.

35.    Defendants coordinated with and inspired third-parties and John Doe defendants to join in their online smear campaign against Bassnectar, posting defamatory statements and making threats of violence towards the Love Here Event.

36.    Upon information and belief, sometime in November 2025 Jordan Julian, the owner of MU, decided to add a second night of GPROM (on December 29, 2025) to compete directly with Bassnectar's scheduled shows.

37.    These actions followed a coordinated "cancel culture" playbook to vilify artists who are perceived as competition by defaming them as a "pedophile," and exploiting the justified moral outrage of the #MeToo movement in order to sell more tickets to their own events.

***Defendants Followed the "Cancel Culture" Playbook by Vilifying Bassnectar as a Tactic to Interfere with the Love Here Event***

38.    Bassnectar was created in 1998 as an interactive art project to merge music and culture to make a positive impact in the community. By the mid-2000s, Bassnectar was touring extensively across the United States and headlining major music festivals. Bassnectar's curated events and tours often sold out in minutes, spanning multiple nights and drawing crowds of more than 20,000 attendees. To date, established as a pioneer of modern electronic music, Bassnectar has released over fifteen studio albums to millions of fans worldwide.

39.    The Bassnectar fanbase has developed into a community of hundreds of thousands of individuals who are connected together as part of the music scene, via social media where everyone's online presence and reputation is essential to their brand viability on x/Twitter, Reddit, Instagram, Facebook, YouTube, Discord, and other platforms. Through Bassnectar's performances and outreach, Bassnectar's musical endeavor has evolved into a cultural movement, providing community, purpose, and identity to thousands of fans across the country. Bassnectar's reputation and image are vital to brand viability, to maintain a career as an artist in the music industry.

40.    In or around 2015, a stalker invented a malicious smear campaign falsely accusing Bassnectar of sexual crimes. Despite no evidence of sexual crime, the lies and smear campaign persisted.

41.    Bassnectar has never been found liable for any allegations of sexual misconduct.

42.    No law enforcement agency has ever formally accused Lorin Ashton of any crime whatsoever. No criminal charges have ever been filed against any of the Plaintiffs.

43.     Despite full knowledge of Bassnectar's innocence, Defendants decided to cast false allegations against him in an attempt to get his Love Here Event cancelled and redirect ticket sales to GPROM.

***Ongoing Damage to Bassnectar***

44.     As a direct result of Defendants' coordinated attacks, Bassnectar continue to suffer severe reputational harm in both their professional and personal communities due to the false, defamatory, and inflammatory accusations spread online.

45.     Bassnectar has experienced ongoing harassment across social media platforms, including a flood of disparaging, false, and inflammatory comments and coordinated campaigns designed to sabotage their work and brand.

46.     Bassnectar has been subjected continued threats to their physical safety, the safety of their fans, and the general public.

47.     Bassnectar's emotional and psychological wellbeing has been severely impacted, as Bassnectar lives under constant fear of harassment, violence, and reputational ruin caused by Defendants' smear campaign.

48.     Bassnectar's losses are ongoing, as Defendants' defamatory statements and coordinated interference remain accessible online, perpetuating harm to Bassnectar's reputation, business prospects, and personal safety.

49.     Defendants' actions were not limited to online attacks but extended to deliberate interference with Bassnectar's contractual and prospective business relationships surrounding the Love Here Event.

50.     By promoting GPROM as a competing New Year's Eve show located just across the Mississippi River, Defendants intentionally sought to divert ticket sales and attendance away

from the Love Here Event.

51.     Defendants weaponized false accusations against Bassnectar while simultaneously marketing GPROM, creating confusion among fans and instilling fear that attending the Love Here Event would expose them to danger.

52.     Defendants used defamatory statements, threats of violence, and coordinated social media campaigns to pressure Pop's Night Club and other partners to destroy Bassnectar's business relationships.

53.     Defendants further exploited the chaos they created by offering discounts and promotional codes for GPROM, capitalizing on the reputational harm inflicted on Bassnectar to boost their own competing event.

54.     As a direct result of Defendants' tortious interference, Bassnectar has suffered hundreds of thousands of damages, Bassnectar's fans have been terrorized, and Bassnectar's ability to conduct business with venues, promoters, and collaborators is severely damaged.

55.     Bassnectar continues to suffer ongoing financial losses and reputational harm as Defendants' smear campaign and interference with the Love Here Event threatens to further damage the Bassnectar brand, diminishing future opportunities for performances, sponsorships, and collaborations.

### COUNT I:
**Defamation Per Se**
***(Against Mr. Ortez, Mr. Elkins, and DownRight)***

56.     Plaintiffs restate and incorporate by reference the allegations contained in Paragraphs 1-55 as if fully stated herein.

57.     Defendants Mr. Ortez, Mr. Elkins, and DownRight ("DownRight Defendants"), without privilege or permission, published false statements about Bassnectar to members of the

general public.

58.     DownRight Defendants made these statements with knowledge of their falsity or in reckless disregard as to whether such statements were true or false and to intentionally injure Bassnectar without just cause or excuse.

59.     DownRight Defendants acted with actual malice when they made the statements about Bassnectar and encouraged others to repeat the statements.

60.     DownRight Defendants' statements impute the inability of Bassnectar to perform or a want of integrity in the discharge of their duties in the entertainment industry, and prejudice Bassnectar in their profession or business and malign them in their business.

61.     DownRight Defendants' statements accuse and/or impute that Bassnectar has committed criminal offenses, including, but not limited to, committing predatory or pedophilic acts.

62.     DownRight Defendants' statements caused Bassnectar damage to their reputation in that the online community at large, as well as current and potential consumers of Bassnectar's music, were told that Bassnectar is a sexual predator and/or engages in pedophilia or other lewd behavior.

63.     As a result of DownRight Defendants' unlawful conduct, Bassnectar suffered severe injury to their character and reputation in their peer and professional communities, as well as diminished their future prospects for business opportunities, including, but not limited to, a severe decline in ticket sales for scheduled events.

**COUNT II:** *In the Alternative to Count I*
**Defamation Per Quod**
*(Against Mr. Ortez, Mr. Elkins, and DownRight)*

64.     Plaintiffs restate and incorporate by reference the allegations contained in

16

Paragraphs 1-55 as if fully stated herein.

65.    Defendants Mr. Ortez, Mr. Elkins, and DownRight ("DownRight Defendants"), without privilege or permission, published false statements about Bassnectar to members of the entertainment and general online community.

66.    DownRight Defendants made these statements with knowledge of their falsity or in reckless disregard as to whether such statements were true or false and to intentionally injure Bassnectar without just cause or excuse.

67.    DownRight Defendants acted with actual malice when they made the statements about Bassnectar and encouraged others to repeat the statements.

68.    DownRight Defendants' statements caused Bassnectar actual and provable reputational harm in that other professionals in the entertainment industry, the online community at large, as well as current and potential consumers of Bassnectar's music, who were told that Bassnectar is a sexual predator and/or engages in pedophilia or other lewd behavior.

69.    As a result of DownRight Defendants' unlawful conduct, Bassnectar suffered severe character and reputational injury in their peer and professional communities, as well as diminished future prospects for business opportunities, including, but not limited to, a severe decline in ticket sales for scheduled events.

## <u>COUNT III:</u>
## Invasion of Privacy by False Light
### *(Against Mr. Ortez, Mr. Elkins, and DownRight)*

70.    Plaintiffs restate and incorporate by reference the allegations contained in Paragraphs 1-55 as if fully stated herein.

71.    Defendants Mr. Ortez, Mr. Elkins, and DownRight ("DownRight Defendants") publication of the statements made about Bassnectar, and their encouragement of others to

disseminate their statements, placed misleading information about Bassnectar before the public, creating an assertion that Bassnectar had been involved in vile and serial criminal and sexual conduct when he had not.

72.    DownRight Defendants published the statements about Bassnectar in with knowledge that they were false or with reckless disregard of their falsity, and with the intention to place Bassnectar in a false light, and with knowledge of the false light in which Bassnectar would be placed.

73.    DownRight Defendants' statements accusing Bassnectar of vile and serial criminal and sexual conduct, stating or implying likelihood of future harm to others, are highly offensive and injurious to Bassnectar's past, current, and future character, reputation, and stature in the community, and by their nature, would be highly offensive to any reasonable person.

74.    DownRight Defendants acted with actual malice when they made the statements about Bassnectar and encouraged others to repeat the statements.

75.    DownRight Defendants published their statements with reckless disregard to Bassnectar's reputation, physical safety, and with reckless disregard for the falsity of their statements.

76.    As a result of DownRight Defendants' unlawful conduct, Bassnectar have suffered great financial harm, embarrassment, extreme emotional distress, and harm to Bassnectar's professional reputation.

**COUNT IV:**
**Intentional Infliction of Emotional Distress**
***(Against Mr. Ortez, Mr. Elkins, and DownRight)***

77.    Plaintiffs restate and incorporate by reference the allegations contained in Paragraphs 1-55 as if fully stated herein.

78.     Defendants Mr. Ortez, Mr. Elkins, and DownRight ("DownRight Defendants") Defendants' conduct of publishing false statements that Bassnectar is a sexual predator and/or a pedophile is extreme and outrageous, goes beyond the bounds of common decency, and is offensive to any reasonable person.

79.     DownRight Defendants intended to cause Mr. Ashton and his family emotional distress and/or knew that there was a high probability that their conduct would cause such emotional distress.

80.     Mr. Ashton and his family have experienced fear for their physical safety and their life upon receiving threats from the general public and having their identity and other personally identifiable information published by DownRight Defendants.

81.     As a result of DownRight Defendants' conduct, Bassnectar has experienced extreme emotional distress, anxiety, mental anguish, embarrassment and humiliation.

### COUNT V:
### Tortious Interference with Business Relationships
### *(Against All Defendants)*

82.     Plaintiffs restate and incorporate by reference the allegations contained in Paragraphs 1-55 as if fully stated herein.

83.     Bassnectar had reasonable expectations of entering into or continuing valid business relationships for their entertainment services.

84.     Defendants knew of Bassnectar's expectancies.

85.     Defendants intentionally and unjustifiably interfered to prevent Bassnectar's expectancies from being fulfilled.

86.     Bassnectar suffered damages as a result of Defendants' interference.

87.     Defendants' tortious interference was intentional and done in bad faith or, at a

19

minimum, with reckless indifference to Bassnectar's rights.

## <u>COUNT VI:</u>
### Violation of the Uniform Deceptive Trade Practices Act (815 ILCS § 510/1 *et seq.*)
### *(Against Mr. Elkins, DownRight, MU, and Mr. Julian)*

88.    Plaintiffs restate and incorporate by reference the allegations contained in Paragraphs 1-55 as if fully stated herein.

89.    Bassnectar hosts, schedules, promotes, and performs at live music events.

90.    Defendants Mr. Elkins, DownRight, MU, and Jordan Julian ("MU Defendants") schedule, promote, and host live music events.

91.    Upon information and belief, MU Defendants took steps to falsely alert the public that Bassnectar poses a danger to the community and had statements published about Bassnectar's alleged immoral and dangerous conduct to various the entertainment industry and general online community.

92.    Upon information and belief, MU Defendants took steps to falsely alert the public that Bassnectar's planned event included a performer who poses a danger to the community.

93.    Upon information and belief, MU Defendants alerted the public that they should boycott Bassnectar's planned event and instead attend MU Defendants' competing event that was to occur at the same time.

94.    MU Defendants used deceptive representations of Bassnectar's character and Bassnectar's business in connection with their own business practices.

95.    MU Defendants have misrepresented to consumers that Bassnectar's services have immoral characteristics and/or Bassnectar uses their services in immoral and offensive ways; disparaged Bassnectar, Bassnectar's services, and/or Bassnectar's business by publishing false or misleading representation of fact; and published these statements knowing and/or hoping they

would harm Bassnectar's business, or with reckless disregard for the falsity of said statements.

96.     MU Defendants knew or should have known their statements were false.

97.     MU Defendants statements have caused great harm to Bassnectar's business and reputation.

98.     MU Defendants acted willfully in its engagement in deceptive trade practices.

## COUNT VII:
### Unjust Enrichment
### *(Against Defendant DownRight and MU)*

99.     Plaintiffs restate and incorporate by reference the allegations contained in Paragraphs 1-55 as if fully stated herein.

100.    DownRight and MU received a benefit from Bassnectar by way of redirection of Bassnectar's good and honorable reputation and Bassnectar's goodwill within the entertainment community.

101.    DownRight and MU's business has financially benefitted from its publication of false and defamatory statements about Bassnectar and their moral character.

102.    DownRight and MU has unjustly retained the benefits flowing from its publication of false and defamatory statements about Bassnectar and their moral character.

103.    DownRight and MU's retention of these benefits is detrimental to Bassnectar.

104.    DownRight and MU's retention of these benefits violates the fundamental principles of justice, equity, and good conscience.

## COUNT VIII:
### Civil Conspiracy
### *(Against All Defendants)*

105.    Plaintiffs restate and incorporate by reference the allegations contained in Paragraphs 1-55 and 83-87 as if fully stated herein.

106.    Defendants, acting in concert, conspired to publish, disseminate, and amplify false and defamatory statements about Bassnectar, intending to tortiously interfere with Bassnectar's planned event and damage Bassnectar's reputation.

107.    Defendants agreed to publish false statements regarding Bassnectar and did so with intent to draw the online community and general public away from Bassnectar's event and redirect the online community and general public to purchase tickets for DownRight and MU's competing event, knowing (or recklessly disregarding) the truth.

108.    In furtherance of this conspiracy, Defendants coordinated their publications, repeated and republished defamatory statements, and encouraged widespread distribution of the false claims.

109.    As a direct and proximate result of Defendants' conspiracy and over acts, Bassnectar suffered reputation harm, emotional distress, and damage to their personal and professional standing.

WHEREFORE, Plaintiffs, LORIN ASHTON, BASSNECTAR TOURING, INC., and AMORPHOUS MUSIC, INC., respectfully request the Court:

1) Enter a temporary restraining order and preliminary injunction requiring Defendants SEAN ORTEZ, KENNETH CLAYTON ELKINS, DOWNRIGHT ENTERTAINMENT, LLC, JORDAN JULIAN, AND MISSISSIPPI UNDERGROUND LLC to delete, remove, and/or destroy all public posts regarding Plaintiffs, LORIN ASHTON, BASSNECTAR TOURING, INC., and AMORPHOUS MUSIC, INC.'s New Year's Eve Event scheduled to occur at Pop's Night Club located at 1403 Mississippi Ave, Sauget, IL 62201 on December 29-31, 2025;

2) Enter a temporary restraining order and preliminary injunction enjoining Defendants

SEAN ORTEZ, KENNETH CLAYTON ELKINS, DOWNRIGHT ENTERTAINMENT, LLC, JORDAN JULIAN, AND MISSISSIPPI UNDERGROUND LLC and their agents, employees, and affiliates from re-publishing the removed statements about Plaintiffs LORIN ASHTON, BASSNECTAR TOURING, INC., and AMORPHOUS MUSIC, INC. during the pendency of this litigation;

3) Enter judgment in their favor and against Defendants SHAWN ORTEZ, KENNETH CLAYTON ELKINS, DOWNRIGHT ENTERTAINMENT, LLC, JORDAN JULIAN, AND MISSISSIPPI UNDERGROUND LLC in an amount to be determined at trial, but estimated to be well in excess of $75,000;

4) Award Plaintiffs' punitive damages;

5) Award Plaintiffs attorneys' fees and statutory pre-judgment interest; and

6) Any other further relief it deems just and appropriate.

## JURY DEMAND

Plaintiffs demand a trial by jury on all non-equitable claims.

Respectfully Submitted,

**LORIN ASHTON, BASSNECTAR TOURING, INC., and AMORPHOUS MUSIC, INC.**

Dated: December 12, 2025

By:*/s/ Nicole O'Toole Peterson*
Jeffrey S. Becker (ARDC #6282492)
Nicole O'Toole Peterson (ARDC #6330227)
Olivia E. Duggins (ARDC #6349003)
SWANSON, MARTIN & BELL, LLP
330 N. Wabash Avenue, Suite 3300
Chicago, Illinois 60611
Phone: (312) 321-9100
jbecker@smbtrials.com
npeterson@smbtrials.com
oduggins@smbtrials.com

## <u>VERIFICATION</u>

The undersigned certifies under penalty of perjury under the laws of the United States of America, the Federal Rules of Civil Procedure and United States Code, that the foregoing factual statements set forth in this Verified Complaint are true and correct, except as to matters stated on information and belief, which the undersigned believes to be true.

Signature: _____

Lorin Ashton, individually and as a
representative of Bassnectar Touring, Inc.
and Amorphous Music, Inc.

Date:       12 / 12 / 2025
       _____